UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAUL CHILL and SYLVIA CHILL, for the use and benefit of the CALAMOS GROWTH FUND, <br><br> Plaintiffs, <br><br> v. <br><br> CALAMOS ADVISORS LLC and CALAMOS FINANCIAL SERVICES LLC, <br><br> Defendants, <br><br> CALAMOS INVESTMENT TRUST and INDEPENDENT TRUSTEES OF CALAMOS INVESTMENT TRUST, <br><br> Respondents. | No. 17 C 1658 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiffs move for an order compelling Respondents to produce certain privileged documents pursuant to subpoenas issued in the underlying litigation, which is pending in the Southern District of New York. *See Chill v. Calamos Advisors LLC*, No. 15 C 1014 (S.D.N.Y. filed Feb. 11, 2015). For the reasons stated below, the motion is denied.

## I. BACKGROUND

Plaintiffs are shareholders in the Calamos Growth Fund (Fund), a mutual fund advised and managed by Defendant Calamos Advisors LLC (Calamos) pursuant to

an Investment Management Agreement. In the underlying litigation, Plaintiffs brought a derivative action on behalf of the Fund under the Investment Company Act of 1940, 15 U.S.C. § 80a-1 et seq., against Calamos and its affiliate Calamos Financial Services LLC, alleging breach of fiduciary duty with respect to compensation received by Defendants for investment adviser and distribution services provided to the Fund. The Fund is a series of the Calamos Investment Trust (the Trust), which is organized as a Massachusetts Business Trust and is overseen by the Trust's Independent Trustees (Trustees). While neither the Trust nor the Trustees are named as Defendants, the Complaint alleges that the Trustees failed to carefully and conscientiously consider or assess information that would have revealed the excessiveness of the compensation. (Dkt. 7, Ex. A at ¶¶ 155–204, 249–63); *see Chill v. Calamos Advisors LLC*, 175 F. Supp. 3d 126 (S.D.N.Y. 2016) (denying motion to dismiss).

Plaintiffs now move to compel the Trust and the Trustees (collectively, Respondents) to produce certain purportedly privileged documents pursuant to subpoenas issued in the underlying action (Subpoenas). The Trust's principal place of business is in Illinois and three of the six Trustees are Illinois residents. In response to the Subpoenas, Respondents produced a limited number of documents, but redacted or withheld 73 documents on the basis of attorney-client privilege. According to Respondents' privilege log, the materials withheld or redacted involve legal advice provided to the Trustees in connection with their oversight of the Fund, including their review and approval of the challenged fees. (Dkt. 7, Ex. E).

## II. DISCUSSION

Although the federal rules and governing case law favor broad discovery, *see* Fed. R. Civ. P. 26(b)(1); *Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.,* 152 F.R.D. 132, 135 (N.D. Ill. 1993), "the attorney-client privilege allows a party to refrain from producing a document . . . where the document contains a confidential communication between a client and her attorney in which the client seeks legal advice," *In re JP Morgan Chase & Co. Sec. Litig.*, No. 06 C 4674, 2007 WL 2363311, at *8 (N.D. Ill. Aug. 13, 2007). Aware of this well-established principle, Plaintiffs contend that the "fiduciary exception" to the attorney-client privilege applies in connection with legal advice sought by the Trustees.

### A. Fiduciary Exception

In *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), the court held in a shareholder derivative suit that:

> [W]here the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the [attorney-client] privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

*Id.* at 1103–04. The *Garner* doctrine, known as the fiduciary exception, has been expanded to nonderivative cases based on the principle that "a trustee may not withhold from the beneficiary any communications by the trustee with an attorney that were triggered by the trustee's need for advice on how to carry out his fiduciary responsibilities." *In re Omnicom Grp., Inc. Sec. Litig.*, 233 F.R.D. 400, 410 (S.D.N.Y. 2006) (citations omitted); *cf. United States v. Jicarilla Apache Nation*, 564 U.S. 162,

167 (2011) ("a trustee who obtains legal advice related to the execution of fiduciary obligations is precluded from asserting the attorney-client privilege against beneficiaries of the trust").

Most courts, including those in the Seventh Circuit, have "recognized the existence of a fiduciary exception to the attorney-client privilege." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 422 (N.D. Ill. 2006); *see Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 787 (7th Cir. 2005) ("[fiduciary duty] exception is premised on the theory that the attorney-client privilege should not be used as a shield to prevent disclosure of information relevant to an alleged breach of fiduciary duty"); *Ferguson v. Lurie*, 139 F.R.D. 362, 365 (N.D. Ill. 1991) ("The fiduciary duty exception is based upon the notion that a communication between an attorney and a client is not privileged from those to whom the client owes a fiduciary duty."); *accord Krase v. Life Ins. Co. of N. Am.*, 962 F. Supp. 2d 1033, 1038 (N.D. Ill. 2013); *In re Gen. Instrument Corp. Sec. Litig.*, 190 F.R.D. 527, 530 (N.D. Ill. 2000); *see also RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 C 5587, 2003 WL 41996, at *4 (S.D.N.Y. Jan. 6, 2003) ("While the Second Circuit has never expressly adopted or applied *Garner*, numerous courts in this District have."); *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011) ("Rooted in the common law of trusts, the fiduciary exception is based on the rationale that the benefit of any legal advice obtained by a trustee regarding matters of trust administration runs to the beneficiaries.").

In order to establish that the exception applies, the party seeking the discovery must establish both "a fiduciary relation and good cause for overcoming the privilege." *Jaffe*, 244 F.R.D. at 422; *see Monfardini v. Quinlan*, No. 02 C 4284, 2004 WL 533132, at *3 (N.D. Ill. Mar. 15, 2004) (same); *RMED*, 2003 WL 41996, at *4 (same). In *Garner*, the court suggested a number of factors to consider in determining good cause, among them:

> whether [the claim] . . . is . . . colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; . . . whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.

430 F.2d at 1104; *see J.H. Chapman Grp., Ltd. v. Chapman*, No. 95 C 7716, 1996 WL 238863, at *1 (N.D. Ill. May 2, 1996) ("Good cause is determined by taking into account factors such as whether the party seeking the information asserts a colorable claim, whether the information sought is not available elsewhere, whether the information sought is related to past or present actions, and whether the information sought may risk a revelation of trade secrets or other confidential information."); *RMED*, 2003 WL 41996, at *4–5 (applying *Garner* factors but stressing that "[t]he apparent necessity of the information and its availability from other sources is considered the most important factor . . . when undertaking the *Garner* analysis").

## B. Analysis

Respondents do not dispute that they owe a fiduciary duty to Plaintiffs or that the documents at issue relate to that duty. (Dkt. 29 at 1–3, 7); (Mot. Hr'g Tr. 15, Apr. 5, 2017) (Respondents acknowledging that "[t]here is a fiduciary duty here"). Instead, Respondents contend that good cause does not exist to overcome the attorney-client privilege. (Dkt. 29 at 5–12); (Hr'g Tr. 14) ("The test here is one of good cause.").

Plaintiffs have the burden to demonstrate good cause to overcome the attorney-client privilege based on the fiduciary exception. *Gen. Instrument*, 190 F.R.D. at 529 ("The issue is generally whether the party seeking discovery can demonstrate good cause for overcoming the attorney-client privilege."); *Chapman*, 1996 WL 238863, at *1 ("In order for the fiduciary exception to apply, the party claiming the exception must generally show . . . good cause for overcoming the attorney-client privilege."); *RMED*, 2003 WL 41996, at *4 ("The Court must [ ] determine if plaintiffs have shown good cause to pierce the attorney-client privilege."). After careful consideration, the Court finds that Plaintiffs have not met their burden.

Several factors do weigh in Plaintiffs' favor. They survived a motion to dismiss, in which the court noted that a key issue is whether the Trustees properly exercised their fiduciary duties. *Chill*, 175 F. Supp. 3d at 145–48. Plaintiffs are not seeking communications related to the defense of, or discovery in, this lawsuit. *See Strougo v. BEA Assocs.*, 199 F.R.D. 515, 524 (S.D.N.Y. 2001) ("while the *Garner* exception permits disclosure of communications relating to the conduct of an alleged action in

proper circumstances, it does not permit disclosure of communications regarding the defense of a lawsuit"); *Int'l Ins. Co. v. Peabody Int'l Corp.*, No. 87 C 464, 1988 WL 58611, at *3 (N.D. Ill. June 1, 1988) (access to privileged communications under the fiduciary exception ceases when the parties' interests become adverse). Respondents do not assert that any trade secrets would be disclosed. Further, no public disclosure will result, pursuant to the confidentiality order in place.

However, Plaintiffs have failed to demonstrate the necessity of the information and its unavailability from other sources. The Court agrees with the Southern District of New York that this is the "most important factor" in determining whether the attorney-client privilege should be pierced. *RMED*, 2003 WL 41996, at *5 ("The apparent necessity of the information and its availability from other sources is considered the most important factor and is stressed by courts when undertaking the *Garner* analysis."); *In re Int'l Bus. Machines Corp. Sec. Litig.*, No. 92 C 9076, 1993 WL 760214, at *5 (S.D.N.Y. Nov. 30, 1993) ("The fourth *Garner* factor, the necessity or desirability of plaintiffs having the information and its availability from other sources, is significant."); *see In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 475 (S.D.N.Y. 1996) (placing "heavy emphasis on the question of whether the documents were of central importance to the plaintiffs' case"). And this "heavy emphasis" makes sense—courts contemplating whether to pierce the attorney-client privilege should not do so lightly without a compelling need. Thus, parties seeking to use the fiduciary duty exception to pierce the attorney-client privilege "bear the burden of coming forward with a particularized showing of need for specifically identified

documents before attorney-client communications will be divulged to them." *Miller v. Genesco, Inc.*, No. 93 C 0096, 1994 WL 698287, at *1 (S.D.N.Y. Dec. 13, 1994).

Here Plaintiffs have failed to meet this particularized showing. Instead, they merely assert, without support, that "the information obviously is not available elsewhere." (Dkt. 6 at 7); (*see also* Dkt. 30 at 9) ("Respondents are the sole source of the communications which are otherwise undisclosed and not 'available elsewhere.'"). But "unavailability" means more than whether these *specific privileged documents* are not available elsewhere—of course they are not. Instead, Plaintiffs must demonstrate that information for this lawsuit is otherwise unavailable. And Plaintiffs' conclusory statements do not demonstrate what Plaintiffs expect the privileged documents to show, how they are important for their case, and why the information contained therein cannot be discovered from nonprivileged sources.

Discovery has been ongoing for a year and Plaintiffs have deposed at least two of the Trustees; however, Plaintiffs cite nothing from the discovery or the depositions to suggest that the privileged documents may contain information that is both necessary and unavailable elsewhere. The Court appreciates that Plaintiffs cannot know exactly what is in the privileged documents. Nevertheless, a request to invoke the fiduciary duty exception "should be supported by (without limitation) an explanation of what plaintiffs expect to obtain by examination of a particular document (possibly supported by deposition testimony concerning the context, although not the content, of the document), and a showing of the unavailability of what they expect to obtain from the document." *Miller*, 1994 WL 698287, at *1 (declining to ap-

ply the fiduciary duty exception because the plaintiffs did not meet their burden of establishing a particularized showing for the information).

Plaintiffs complain that Respondents have produced "a mere 60 documents." (Dkt. 30 at 9). But Defendants have produced over "650,000 pages of documents" in this litigation, and Plaintiffs have received "41,000 pages of board materials alone, including six years' worth of every single interaction between the advisor and the trustee." (Hr'g Tr. 18, 26). Further, Plaintiffs have not identified any specific instance where the Trustees invoked the attorney-client privilege and declined to respond to a pertinent deposition question concerning investment advisor compensation. (*See id.* 20). For the good-cause prong to have any meaning, this Court must require more than mere conjecture that otherwise privileged communications contain critical information. Under these circumstances, the Court is not willing to pierce the attorney-client privilege merely for Plaintiffs to go on a "fishing expedition." *See Garner*, 430 F.2d at 1104 (cautioning that the fiduciary exception should not be used to allow a party to "blindly fish[ ]" for information).

Plaintiffs cite to *Kenny v. Pac. Inv. Mgmt. Co. LLC*, No. 14 C 1987, 2016 WL 6836886 (W.D. Wash. Nov. 21, 2016), as a case on all fours with this case where the court ordered the production of the documents. But the *Kenny* court merely applied the first prong of the fiduciary exception analysis, finding that a fiduciary relationship existed between the mutual fund trustees and the fund's shareholders. *Id.* at *4. This Court agrees with the *Kenny* court's analysis regarding the fiduciary exception. However, the *Kenny* court found that *Garner*'s good cause requirement had not

been adopted by the Ninth Circuit and, therefore, did not apply the good cause standard in ruling that the attorney-client privilege should be pierced. *Id.* at *3, *5. *Kenny* is therefore unpersuasive.

Plaintiffs also argue that the withheld information is probative and that Respondents have not identified any burden or expense in producing the information. (Dkt. 30 at 7–9). But the issue is not the information's probity but whether Plaintiffs have demonstrated good cause for piercing the attorney-client privilege. The Court concludes that they have not.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Compel Compliance with Subpoenas [1][6] is **DENIED**.

E N T E R:

Dated: April 25, 2017

MARY M. ROWLAND
United States Magistrate Judge